**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

CORTEZ J. JACKSON,

                           Petitioner,    :       Case No. 2:25-cv-00795

- vs -                                 District Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Michael R. Merz

ROCHELLE MOORE, WARDEN,
Pickaway Correctional Institution,

                                     :
                    Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case was brought *pro se* by Petitioner Cortez Jackson to obtain relief from his conviction in the Franklin County Court of Common Pleas on charges of felony murder, tampering with evidence, and having weapons while under a disability and his consequent sentence of imprisonment for eighteen years to life. The case is before the Court for decision on the merits on the Petition (ECF No. 3), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 10), and Petitioner's Reply (ECF No. 15).

**Litigation History**

On August 26, 2021, a Franklin County grand jury returned an indictment charging Petitioner with one count of purposeful murder, in violation of Ohio Revised Code § 2903.02(A);

1

one count of felony murder, in violation of Ohio Revised Code § 2903.02(B); one count of domestic violence, in violation of Ohio Revised Code § 2919.25; one count of tampering with evidence, in violation of Ohio Revised Code § 2921.12; and one count of having weapons while under disability, in violation of Ohio Revised Code § 2923.13. Both of the murder charges and the tampering with evidence charge contained accompanying firearm specifications. The charges arose from the August 19, 2021, death of Alyse Sharrae Edwards (Indictment, State Court Record, ECF No. 8, Ex. 1).

A trial jury found Jackson not guilty of purposeful murder, but guilty of felony murder and tampering with evidence. The trial judge found Jackson guilty of having weapons under disability which was tried to the Court. He then sentenced Jackson to be imprisoned for eighteen years to life (Judgment Entry, State Court Record, ECF No. 8, Ex. 6).

Jackson appealed to the Ohio Tenth District Court of Appeals, pleading the single assignment of error that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence (Appellant's Brief, State Court Record, ECF No. 8, Ex. 9, PageID 80). The Tenth District affirmed, *State v. Jackson*, 2024-Ohio-2721 (Ohio App. 10th Dist. Jul. 18, 2024); and the Ohio Supreme Court declined to exercise further appellate jurisdiction, *State v. Jackson*, 175 Ohio St. 3d 1518 (Oct. 29, 2024).

On October 25, 2024, Jackson filed a *pro se* Application to Reopen his appeal pleading two claims of ineffective assistance of trial counsel (State Court Record, ECF No. 8, Ex. 15). The Tenth District denied the Application as untimely. *Id.* at Ex. 17. Jackson did not appeal to the Ohio Supreme Court.

On August 4, 2025, Jackson filed the instant Petition for Writ of Habeas Corpus pleading

2

one ground for relief, albeit with two sub-claims:

> **Ground One**: The trial court erred and deprived Petitioner of due process of law guaranteed by the 14th Amendment to the U.S. Constitution and Article I, Section 8 of the Ohio Constitution by finding him guilty of murder and tampering with evidence, as those verdicts were not supported by sufficient evidence and were against the manifest weight of the evidence.

(Petition, ECF 3, PageID 38-43).

# Analysis

Respondent argues that Petitioner's second sub-claim – that the verdict is against the manifest weight of the evidence – is not cognizable in habeas corpus. Petitioner agrees several times in his Reply. And the Magistrate Judge agrees. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Sub-claim two should be dismissed as non-cognizable.

Therefore the only claim before the Court is sub-claim one, to wit, that the State presented insufficient evidence for the jury to conclude beyond a reasonable doubt that Petitioner had committed each and every essential element of the offense of which he was convicted – felony murder.

Petitioner spends a substantial portion of his Reply rebutting what he presumes is a lack of exhaustion defense by Respondent (Reply, ECF No. 15, PageID 755-57, arguing compliance with *McMeans v. Brigano,* 228 F.3d 674 (6th Cir. 2000)). This argument is unnecessary because Respondent has not raised a lack of exhaustion defense nor has the State claimed Jackson has procedurally defaulted his sufficiency of the evidence claim by not fairly presenting it to the state courts. Instead, Respondent defends on the merits.

An allegation that a verdict was entered upon insufficient evidence states a claim under the

3

Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

5

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

We review challenges to the sufficiency of the evidence *de novo. United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018). "To test the sufficiency of the evidence, we 'must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Crump*, 65 F.4th 287, 294 (6th Cir. 2023) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). In so doing, we do not weigh the evidence, assess credibility of the witnesses, or substitute our judgment for that of the factfinder. *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020).

The state court's application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Nagy*, 962 F.3d at 199 (quoting *White v. Woodall,* 572 U.S. 415, 419 (2014)). In other words, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 572 U.S. at 427 (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)).

Together, *Jackson* and AEDPA's two layers of deference dictate that "a federal court's 'review of a state-court conviction for sufficiency of the evidence is very limited.'" *Tackett v. Trierweiler,* 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)).

As the Supreme Court held in *Winship*, there must be sufficient evidence on every element of the offense of conviction.  Petitioner was convicted of tampering with the evidence and challenged that conviction on appeal under the *Jackson* standard, but he makes no argument in

habeas that that conviction was upon insufficient evidence.  Accordingly, the Court should defer to the conclusion of the Tenth District that the tampering conviction was supported by sufficient evidence.

Jackson's principal conviction is for felony murder in violation of Ohio Revised Code § 2903.02(B).  That statute provides "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence." In turn felonious assault is forbidden by Ohio Revised Code § 2903.11(A)(1) which provides "No person shall knowingly * * * [c]ause serious physical harm to another." There is no dispute that the victim in this case, Alyse Sharrae Edwards, died and that the cause of death was a bullet wound to her abdomen.  There is likewise no dispute that shooting someone in the abdomen, if done knowingly, constitutes felonious assault.  Petitioner's case hinges on whether there was sufficient evidence to conclude he acted knowingly.

The Ohio Tenth District Court of Appeals decided the evidence on that element was sufficient for conviction,  It found:

> As pertinent to this appeal, the following evidence was adduced at trial.
>
> {¶ 4} Three individuals who were near Edwards' apartment when she was shot testified. Onaee Sharp, a neighbor of Edwards and **Jackson**, testified that, on the morning of August 19, 2021, she heard "either a little screaming or a loud '[h]elp' and a big bump." (Apr. 3, 2023 Tr. Vol. II at 139.) Her boyfriend, Terrence Thomas, told her there was "a dead body" at her apartment door. (Tr. Vol. II at 139.) She opened the door to find Edwards on the ground and **Jackson** in the hallway with a shocked look on his face. Sharp could see blood on her door from Edwards, and she looked at **Jackson** and asked him "what the eff did he do to her." (Tr. Vol. II at 131.) **Jackson** gave no response, and Sharp immediately called 911 for help. Although **Jackson** initially was unresponsive to her, when the police arrived "he [became] irate, he started punching on the walls and everything instead of just answering the questions." (Tr. Vol II at 144.) Thomas testified that he first opened the

apartment door after hearing someone knock. When he opened it, he saw Edwards on the ground with blood "all over the door, all over the floor in the hallway." (Tr. Vol. II at 157.) He shut the door and informed Sharp someone was in the hall, and he thought she had been shot. Damien O'Bryant, who was staying with a friend at a neighboring apartment, testified that, when he reentered the apartment building after smoking outside, he saw a severely injured Edwards, who looked at him and said, "[h]elp." (Tr. Vol. II at 170.) Around the same time, he observed **Jackson** "come back into the building." (Tr. Vol. II at 180.) O'Bryant immediately called the police.

{¶ 5} Columbus Division of Police Officers Michael Church, Darryl Kerns, and Lucas Metz were dispatched to the scene. Officer Church testified that, when they entered the apartment building, they observed Edwards' bloody body. **Jackson** was nearby screaming that Edwards had been shot. Because Edwards' head was leaning against a door, Officer Kerns repositioned her so she was lying completely flat. They observed a gunshot wound to her lower abdomen and a trail of blood through the apartment.

Officer Church asked **Jackson** if he knew who had shot Edwards, and he **stated** he did not know. Initially, **Jackson** seemed distraught about Edwards being shot, and then he became upset at the officers, claiming they were not doing their job or helping her. Officer Metz testified that he had to physically remove **Jackson** from the area where Edwards was and detain him because he was "agitated * * * screaming, [and] not wanting to listen." (Tr. Vol. II at 215.) Officer Metz was concerned **Jackson** would interfere with the officers helping Edwards.

{¶ 6} Donald Jones, a detective in the Crime Scene Search Unit of the Columbus Division of Police, testified that while investigating and processing the scene they found a spent shell **casing**, also called a cartridge **case**, in the kitchen sink and a firearm in the water tank behind the toilet in the bathroom. Once the top of that tank was removed, the firearm was visible in the water. Keith O'Connor, another detective for the Columbus Division of Police, interviewed **Jackson** at police headquarters. Detective O'Connor testified that **Jackson** was asked whether the shooting was an accident, and he did not disclose anything about what happened, other than denying that he shot Edwards.

{¶ 7} Forensic experts examined the recovered firearm, cartridge **case**, and the gunshot residue samples taken from **Jackson's** hands. Caleb Worley, a forensic scientist for the

Columbus Division of Police Crime Laboratory, testified that the cartridge **case** was fired from the firearm found at the scene. Worley further testified that, while he did not test the degree of force necessary to pull the trigger of this firearm, he fired this particular weapon and did not observe any remarkable deviation from the average force needed to pull a trigger. Relatedly, he noted it is "extremely difficult" for a modern firearm to fire unless the trigger is pulled. (Tr. Vol. III at 295.) Ted Manasian, a gunshot residue expert for the Ohio Bureau of Criminal Investigation, testified that the gunshot residue test kit applied to **Jackson's** hands soon after the shooting did not reveal the presence of any gunshot residue. Manasian noted that gunshot residue generally does not adhere well to surfaces and easily can be washed off hands.

{¶ 8} **Jackson** testified in his own defense as follows. He and Edwards lived together and had three children during their relationship. Prior to the shooting, two of the children were in the custody of Franklin County Children Services. Edwards blamed **Jackson** and his family for those children being removed from their home. At approximately 5:00 a.m., August 19, 2021, and after Edwards was out partying, she returned to their apartment, smelling like alcohol and marijuana. Edwards became angry at **Jackson** when he told her he was going to take their daughter and leave. She retrieved a firearm from a closet. Edwards confronted **Jackson** with the weapon, and they physically struggled. He grabbed her wrist trying to take the weapon from her, the weapon discharged while in her hand, and then she dropped it. **Jackson** picked up the firearm, took it into the bathroom, and dropped it into the back of the toilet. He then called the police and tried to apply pressure to the wound to Edwards' abdomen. **Jackson** denied shooting Edwards, washing his hands after the shooting, or otherwise placing his hands in water.

● **\* \* \* \***

A. **Sufficiency of the Evidence**

{¶ 14} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 15} Here, the jury found **Jackson** guilty of one count of murder and one count of tampering with evidence, and the trial court found **Jackson** guilty of one count of having a weapon while under disability.[1] R.C. 2903.02(B) **states** that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence." This offense is known as "felony murder," and felonious assault is an example of an offense of violence. Under R.C. 2903.11(A)(1), "[n]o person shall knowingly * * * [c]ause serious physical harm to another." As to the offense of tampering with evidence, R.C. 2921.12(A)(1) **states** "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 16} **Jackson** does not directly challenge the evidentiary establishment of any specific element of these offenses; instead, he argues Edwards' death was the result of their physical struggle for control of the firearm after Edwards angrily confronted **Jackson** for suggesting their third child, like the other two, would be removed from her care. **Jackson** acknowledges his DNA was found on the firearm, but he explains this was because he picked up the firearm and placed it in the toilet after Edwards was shot. Relatedly, he asserts the absence of gunshot residue on his hands indicates he was not near the firearm when it discharged, and therefore he did not pull the trigger. When viewed in favor of the prosecution, however, the evidence demonstrated all the elements of murder and tampering with evidence.

{¶ 17} The evidence showed that Edwards was fatally shot one time in the abdomen. **Jackson** testified that, although he was physically struggling with Edwards when she was shot, he did not pull the trigger of the firearm in Edwards' possession. He suggests the firearm may have been jostled enough to cause it to discharge the projectile, without anyone pulling the trigger, or Edwards herself pulled the trigger. But testimony indicated that it would be very unlikely for the weapon to fire unless the trigger was pulled. Immediately after being shot, Edwards begged for aid from others in the area, knocking on the neighbor's door and saying "help" to someone entering the apartment building. This reasonably indicated she was trying to get away from **Jackson** after being shot. Although no gunshot residue was found on **Jackson's** hands, this fact did not necessarily establish that he did not fire the weapon, as the evidence also demonstrated that his DNA was found on the weapon, gunshot

10

> residue is easily washed off, and, immediately after the shooting, **Jackson** placed the fired weapon inside the covered water tank behind the apartment's toilet. Thus, the jury reasonably found that **Jackson** knowingly pulled the trigger and shot Edwards, killing her. Further, **Jackson's** placement of the firearm in the water tank reasonably demonstrated his intent to hide the weapon used to shoot Edwards, clearly a piece of physical evidence that would be pertinent to an investigation of her death. In sum, the evidence reasonably established all the elements of felony murder and tampering with evidence.
>
> {¶ 18} Thus, there was sufficient evidence to support **Jackson's** convictions.

*State v. Jackson*, 2024-Ohio-2721 (Ohio App. 10th Dist. Jul. 28, 2024)(emphasis in original).

In arguing this Court should not defer to the Tenth District's decision, Jackson does not argue that that court applied the wrong legal standard, but rather that its findings of fact are unreasonable.  He states "The state appellate court plainly misstates material facts present in the trial court record that are central to Petitioner's defense against the prosecution's theory in making its findings that are presumed correct in this proceeding."  (Reply, ECF No. 15, PageID 754).

He begins by claiming the Tenth District *sua sponte* found "does not directly challenge the evidentiary establishment of any specific element of these offenses; instead, he argues Edwards' death was the result of their physical struggle for control of the firearm." (Reply, ECF No. 15, PageID 754).  But to show that this was a *sua sponte* conclusion, he cites to the Return of Writ, not to any argument the State made before the Tenth District. *Id.*  Examination of Jackson's brief on appeal shows that he did not focus on insufficiency of evidence on any specific element in that brief (Appellant's Brief, State Court Record, ECF No. 8, Ex. 9).  In fact, the element on which he now focuses – knowingly – does not occur in his brief on appeal.  The Tenth District's conclusion that he did not directly challenge the evidentiary foundation of any specific element is correct.

Then Jackson essentially admits the "knowingly" element was not the focus of appeal, but

11

blames it on deficient performance of his appellate counsel and claims he cured that deficiency by arguing the knowingly element in his *pro se* appeal to the Ohio Supreme Court (Reply, ECF No. 15, PageID 756).  However, the Ohio Supreme Court did not take jurisdiction of the case and render a decision on the merits; the last state court decision on the merits, the one as to which deference is due, was that of the Tenth District.

Next Jackson argues that the Tenth District "completely ignores the factual material issue" that a forensic report shows the DNA of both Jackson and the victim on the gun (Reply, ECF No. 15, PageID 757).  The fact that the Tenth District did not mention this forensic report does not mean its decision is not entitled to deference.  None of the progeny of *Jackson v. Virginia* suggest that a state court must recite every piece of evidence it considered to be entitled to deference.  The Tenth District specifically mentions that Jackson's DNA was found on the weapon (¶ 17), a fact established by the forensic report to which Jackson refers.

Next Jackson accuses the Tenth District of "ignore[ing] the testimony of Columbus Police Crime Lab Technician, Caleb Worley, who provided testimony that a test was never performed on the gun retrieved from the scene to see if it would be easy for it to go off if it were hit with something, dropped, or anything along those lines." (Reply, ECF No. 15, PageID 757).  Again, in properly deciding a sufficiency of the evidence claim, an appellate court has no obligation to recite all of the evidence which it did not find persuasive.

In fact the Tenth District did not ignore Worley's testimony, but found

> Caleb Worley, a forensic scientist for the Columbus Division of Police Crime Laboratory, testified that the cartridge **case** was fired from the firearm found at the scene. Worley further testified that, while he did not test the degree of force necessary to pull the trigger of this firearm, he fired this particular weapon and did not observe any remarkable deviation from the average force needed to pull a trigger. Relatedly, he noted it is "extremely difficult" for a modern firearm to fire unless the trigger is pulled.

12

*State v. Jackson, supra*, at ¶ 7. Further, in deciding Jackson's weight of the evidence claim, the

Tenth District held:

> {¶ 21} As discussed above, **Jackson** posits that the firearm somehow discharged without him pulling the trigger, after he and Edwards engaged in an altercation arising from her aggressive reaction to possibly losing custody of another child. He testified that when he confronted Edwards about another night of her carousing, she became enraged and retrieved the firearm, which somehow went off when he struggled with her to get control of it. He argues the absence of gunshot residue on his hands heavily weighed against a finding that he pulled the firearm's trigger. But the absence of gunshot residue on his hands does not necessarily negate the inference that he pulled the trigger, as that type of residue is easily removed with water. Further, **Jackson's** DNA was on the weapon, and he admitted to immediately placing the firearm in the water tank behind the toilet. Thus, while there was some conflicting evidence at trial, the jury was in the best position to evaluate the evidence and resolve any disputed facts, including the central disputed fact of whether **Jackson** pulled the firearm's trigger, killing Edwards.

*State v. Jackson, supra.*

In sum, Jackson has not established any deficiency in the Tenth District's fact-finding. He

disagrees with that court's conclusion about what the jury could properly infer, but he has not

shown there was any material evidence in the record which the Tenth District ignored.

In the second half of his Reply, Jackson focuses on the proof of the "knowingly" element.

In considering this argument it must be noted that there were only two eyewitnesses to the shooting

and one of them was dead by the time of trial[1]. Thus the only direct evidence the jury heard about

how the shooting happened was from Jackson; the State's case as to what happened during the

shooting was circumstantial. Jackson argues "regardless of Petitioner's conduct after the accidental

shooting occurred, the evidence didn't clearly support a jury's conclusion that Petitioner knew that

---

[1] A prominent twentieth-century defense attorney was often heard to remark that he preferred to defend murder cases because there was always one less witness.

13

physical harm to Edwards was probable." (Reply, ECF No. 15, PageID 763).  It is common knowledge – so common that the Court could take judicial notice of it under Fed. R. Evid. 201 – that when you fire a gun into someone's stomach, serious physical harm is very probable.  The question is not whether serious physical harm was probable from the firing of the weapon, but whether Jackson fired it.  The State presented evidence rebutting Jackson's claim of accidental discharge and the jury believed it.

Jackson argues at length that he proved the discharge was accidental (Reply, ECF No. 15, PageID 764, *et seq.*).  But no such claim was made on direct appeal and Jackson has not cited to any place in the record where that argument was made to the jury.  Jackson cites *Jones v. State*, 51 Ohio St. 331 (1894), for the proposition that accident negates the *mens rea* element of an offense.  Ohio homicide law has changed considerably in the last 130 years, but assuming *Jones* is still good law, it does stand for that proposition – in a murder case where the required *mens rea* was that the offender acted purposely.  Jackson was found not guilty of purposeful murder, so the jury apparently gave some weight to his account of what happened.  But accident, even if proved to the jury's satisfaction, would not negate the knowingly element.

For the proposition that "[t]he defense of accident serves to negate the element of criminal culpability in the charged offenses," Jackson cites *State v. O'Dell,* 2009-Ohio-1040 ¶13 (Ohio App. 2d Dist. 2009).  In that opinion Judge James Brogan wrote for the Second District that there was no *mens rea* element in the crime of rape of a child under thirteen and the Due Process Clause did not require a *mens rea* element.  In the paragraph cited by Jackson, Judge Brogan wrote "Furthermore, the defense of accident, which Appellant attempted to raise, is not an affirmative defense in Ohio; it serves only to negate the element of intent in crimes where intent must be shown. *State v. Poole* (1973), 33 Ohio St.2d 18, 20, 294 N.E.2d 888).  Again, intent is not an

14

element of the offense of which Jackson was convicted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 15, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.